ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 30 2003
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| VIRGINIA E. SWICEGOOD<br>AS EXECUTRIX OF THE ESTATE OF<br>WILLIAM R. SWICEGOOD, JR., M.D.,<br><br>    Plaintiff-<br>    Counterdefendant,<br><br>MARTI T. DEAN,<br><br>    Plaintiff-<br>    Intervenor,<br><br>and DAVID GREENSTONE, as<br>RECEIVER FOR MARTI T. DEAN,<br><br>    Plaintiff-<br>    Intervenor,<br><br>VS.<br><br>THE MEDICAL PROTECTIVE<br>COMPANY,<br><br>    Defendant-<br>    Counterplaintiff. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 3:95-CV-0335-D |

MEMORANDUM OPINION
AND ORDER

    Defendant-counterplaintiff The Medical Protective Company ("Medical Protective") moves the court to bifurcate/sever plaintiffs-intervenors' ("plaintiffs'") extracontractual claims from their contractual causes of action so that discovery is conducted in separate phases and the trials are conducted separately. Medical Protective's motion preceded the court's September 19, 2003 memorandum opinion and order, in which it decided the parties' cross-motions for summary judgment. *See Med. Protective Co. v. Swicegood*, 2003 WL 22234928 (N.D. Tex. Sept. 19, 2003)

(Fitzwater, J.) ("*Swicegood III*").[1] Subsequent to that decision, Medical Protective refined its motion in its reply brief, and it now seeks bifurcation of discovery and trial of the allocation/apportionment issue addressed in *Swicegood III* from the balance of the case. *See, e.g.,* D. Rep. Br. at 2 n.1. The court grants the motion to the extent that it will conduct a bifurcated trial before the same jury in which, during phase I, the jury will consider evidence concerning, and return a verdict allocating, the damages the jury found in the Underlying Lawsuit[2] between covered and non-covered claims. In phase II the same jury will consider any remaining claims and issues. The court otherwise denies the motion.

Medical Protective has also filed a motion for protective order in which it asks the court to stay discovery on plaintiffs' extracontractual claims, and it requests expedited consideration of the motion. The court grants expedited consideration but, for the reasons that follow, denies the motion for protective order.

I

The background facts and procedural history of this case are set out in *Swicegood III*. *See Swicegood III*, 2003 WL 22234928, at *1-*4. The court will not repeat these matters because the parties are well familiar with them. To understand the present decision, however, it is necessary to refer to and understand *Swicegood III*.

Medical Protective moves the court to bifurcate, for discovery and for trial, the allocation issue in this case from all other claims and issues. In *Swicegood III* the court held that plaintiffs could

---

[1] Medical Protective filed its motion on June 4, 2003. At the parties' request, the court deferred briefing on the motion until the court decided the summary judgment motions.

[2] *Dean v. Swicegood*, No. 94-6195 (191st Dist. Ct., Dallas County, Tex.), *aff'd,* 2001 WL 1464934 (Tex.App.—Dallas Nov. 20, 2001, pet. denied) (not designated for publication).

prove in this coverage suit that the damages awarded in the Underlying Lawsuit were for claims covered under the Swicegood Policy and the Clinic Policy.[3] It concluded that they were not required to obtain this allocation in the Underlying Lawsuit itself. Medical Protective maintains that it will incur prejudice, and that potentially unnecessary litigation expenses and court time will be incurred, if the court does not order bifurcation of discovery and trial of the allocation issue from the balance of the case. It posits that, under Texas law, plaintiffs' extracontractual claims depend on the outcome of the contractual dispute. *See, e.g.,* D. Rep. Br. at 5 ("If the covered acts resulted in damages of $600,000 or less ($500,000 under the Swicegood policy and $100,000 under the Clinic policy), no breach of the policies at issue arises and all remaining claims, including claims related to alleged breach of *Stowers* and statutory extracontractual duties, become moot."). It maintains that all of plaintiffs' other claims will be rendered moot if the jury in this case does not find that covered damages found in the Underlying Lawsuit exceed $600,000. Medical Protective therefore urges that it is appropriate to bifurcate discovery and trial to prevent potentially unnecessary discovery and trial preparation and to ameliorate prejudice that would result if the jury hears evidence relevant to extracontractual claims (e.g., settlement offers concerning a disputed contract claim) that would otherwise be inadmissible.

Plaintiffs oppose the motion, contending that the elements of the contractual claims are inextricably intertwined with those of the extracontractual causes of action, that Medical Protective has failed to demonstrate that it will be prejudiced in the absence of bifurcation, and that bifurcation

---

[3]Medical Protective insured Dr. Swicegood for medical malpractice under Policy No. 555185 (the "Swicegood Policy") in the amount of $500,000, and it insured Dr. Swicegood's professional association, Hull-Swicegood, P.A. (the "Clinic"), under Policy No. C33006 (the "Clinic Policy") in the amount of $100,000.

will inconvenience the parties and the court and will waste judicial resources. In particular, they argue that the trial of plaintiffs' contractual claims will necessarily involve litigation of a waiver/estoppel issue that will include evidence that is the same as that required to prove their extracontractual claims.

II

The court holds that the appropriate relief in this case is to conduct a two-phase trial before the same jury, in which the jury in phase I will decide whether the jury in the Underlying Lawsuit awarded more than $600,000 for damages covered under the Swicegood Policy and the Clinic Policy and then decide in phase II, if necessary, any remaining claims and issues. The court declines to bifurcate discovery and trial preparations.

Fed. R. Civ. P. 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Although in federal court "[s]eparation of issues . . . is not the usual course that should be followed[,]" *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993), in Texas "[i]n insurance coverage suits, a plaintiff's bad faith claims generally depend on the outcome of contractual coverage claims and are usually severed[,]" *South Hampton Refining Co. v. National Union Fire Insurance Co.*, 875 F. Supp. 382, 384 (E.D. Tex. 1995) (citing *United States Fire Insurance Co. v. Millard*, 847 S.W.2d 668, 672 (Tex. App. 1993, no writ)). This prevents evidence from being introduced on

such matters as settlement offers concerning a disputed contract claim. *See Liberty Nat'l Fire Ins Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996).

The court agrees with Medical Protective that the trial of the allocation issue should be separate. The jury need not, and should not, consider evidence concerning other matters, including proof regarding settlement offers, to decide how the damages in the Underlying Lawsuit are to be allocated between covered and non-covered claims. And it also makes sense to try this issue first, since the disposition of this question may narrow, if not eliminate, the remaining claims and issues.

The court disagrees, however, that discovery should be bifurcated and that the trials should be conducted before separate juries. This approach potentially adds unwarranted delay to a case that is already old. This lawsuit was delayed for several years while the underlying state-court proceedings were completed, and it needs to be resolved. The court made this clear to counsel at a conference this summer. If the court requires two trials, and if it delays discovery and pretrial preparations for part of the case, there is a real possibility, if not certainty, of additional delay.

Moreover, if a second trial is necessary, it would be more efficient to ask the same jurors who heard pertinent evidence regarding the allocation issue to apply that evidence to the relevant extracontractual claims, avoiding unnecessary duplication of efforts (e.g., presentation of the same historical evidence) and burdens on witnesses who would be required to testify twice.

In sum, the approach the court has adopted protects Medical Protective from the introduction of prejudicial and irrelevant evidence that should not be considered in the allocation trial, but it reduces potentially unwarranted delay and duplication of effort by structuring discovery and pretrial

preparations and trial so that any remaining issues and claims can be resolved promptly thereafter.[4]

III

Medical Protective also moves for a protective order to stay discovery on plaintiffs' extracontractual claims. Based on the court's decision above, it follows that this motion must be and is denied.

* * *

Accordingly, Medical Protective's June 4, 2003 motion to bifurcate/sever extracontractual claims from contractual claims is granted to the extent set forth and is otherwise denied. Its October 28, 2003 motion for expedited consideration of motion for protective order is granted, and its October 28, 2003 motion for protective order is denied.

**SO ORDERED.**

October  30  , 2003.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[4]The court recognizes that, in some cases, multiphase trials cannot be conducted fairly before the same jury because the examination of the veniremembers would require disclosure of matters pertinent to a contingent phase that should only be revealed after the verdict in a prior phase. The court is confident that in this case it can frame questions during jury selection that will not prejudice either side during phase I, but that will allow the exercise of cause challenges and peremptory strikes based on issues relevant to phase II.