ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 29 2004

CLERK, U.S. DISTRICT COURT
By _____
   Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VIRGINIA E. SWICEGOOD AS EXECUTRIX OF THE ESTATE OF WILLIAM R. SWICEGOOD, JR., M.D., | § § § § | |
| Plaintiff-Counterdefendant, | § § § | Civil Action No. 3:95-CV-0335-D |
| MARTI T. DEAN, | § § § | |
| Plaintiff-Intervenor, | § § § | |
| and DAVID GREENSTONE, as RECEIVER FOR MARTI T. DEAN, | § § § | |
| Plaintiff-Intervenor, | § § § | |
| VS. | § § | |
| THE MEDICAL PROTECTIVE COMPANY, | § § § § | |
| Defendant-Counterplaintiff. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs-intervenors Virginia E. Swicegood, as Executrix of the Estate of William R. Swicegood, Jr. (the "Estate"), M.D., Marti T. Dean ("Dean"), and David Greenstone ("Greenstone"), as Dean's receiver (collectively, "plaintiffs"), move to compel defendant-counterplaintiff The Medical Protective Company ("Medical Protective") to produce information concerning the indemnity reserves it set for the claims asserted against William R. Swicegood, Jr., M.D. ("Dr. Swicegood") and Hull-Swicegood, P.A. (the "Clinic") in *Dean v. Swicegood*, No. 94-6195 (191st Dist. Ct., Dallas

County, Tex.) ("Underlying Lawsuit"), *aff'd*, 2001 WL 1464934 (Tex. App.—Dallas Nov. 20, 2001, pet. denied) (not designated for publication). Medical Protective opposes the relief sought. For the following reasons, the court grants the motion.

I

The relevant background facts and procedural history of this case are set out in *Medical Protective Co. v. Swicegood*, 2003 WL 22234928, at *1-*4 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.), and need not be repeated. Plaintiffs maintain that Medical Protective has improperly refused to provide or permit discovery concerning the indemnity reserves it set for the claims that Dean brought against Dr. Swicegood and the Clinic in the Underlying Lawsuit. They reason that information that shows the amount for which Medical Protective would have been willing to settle the Underlying Lawsuit bears on the Estate's and Greenstone's claims against Medical Protective under the *Stowers* doctrine[1] and for unfair settlement practices claim under Tex. Ins. Code Ann. art. 21.21, § 4(10)(a)(ii) (Vernon Supp. 2004)[2], because it is probative of whether the terms of Dean's offers were such that an ordinarily prudent insurer would have accepted them. Medical Protective argues that evidence of the reserves is not relevant or admissible and would not lead to the discovery of relevant or admissible

---

[1]*G. A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). Under *Stowers* a plaintiff must prove "(1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999) (quoting *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994)).

[2]The elements of a claim for unfair settlement practices are set out in *Rocor International Inc. v. National Union Fire Insurance Co.*, 77 S.W.3d 253 (Tex. 2002). To prove this cause of action, the plaintiff must establish that "(1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it." *Id.* at 262.

evidence.

II

The court considers first whether Texas categorically precludes discovery of indemnity reserve information in actions like the instant case. The only Texas decision that Medical Protective cites to argue for a complete ban on such discovery is *In re American Home Assurance Co.*, 88 S.W.3d 370 (Tex. App. 2002, orig. proceeding). Medical Protective's reliance on *American Home* is misplaced. First, there is no indication in that case that the court intended to adopt a categorical rule against such discovery. The court stated:

> Paragraph 4, requiring documentation and deposition information regarding the setting of reserves for third-party claims against the plaintiffs is improper because the information sought is not admissible and would not lead to the discovery of admissible evidence.

*Id.* at 377.

Second, because the *American Home* court did not explain its reasoning for reaching this conclusion—its entire analysis is that which the court has just quoted—the court cannot determine whether its governing principles apply outside the factual context of that lawsuit.

Third, the case did not involve a claim under *Stowers*, and it is unclear whether the article 21.21 cause of action in *American Home* involved an unfair settlement practices claim like the one asserted here. Essentially, the plaintiff-insured in *American Home* sought under various theories to establish that the defendants-insurers should have provided coverage for third-party environmental claims. Although there are similarities between why the plaintiff in *American Home* sought, and plaintiffs in the instant case seek, discovery concerning indemnity reserves, there is no indication that *American Home* involved the question whether the terms of the third-parties' settlement offers were such that an ordinarily prudent insurer would have accepted them.

- 3 -

The court therefore declines to hold that Texas would in all circumstances preclude discovery of Medical Protective's indemnity reserves.

III

Medical Protective next argues that, if discovery is not uniformly precluded, the question of discoverability should be determined on an individual case basis according to this three-part test: (1) the precise issues in the case, (2) the likelihood that reserve information would be relevant to those issues, and (3) the demonstrated purpose of setting the reserve. D. Br. at 3 (citing Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 251:29 (West Supp. 2003)). In their reply brief, plaintiffs agree with this formulation and contend that, applying these factors, the court should allow discovery. *See* Ps. Rep. Br. at 2.

Plaintiffs argue that the amount Medical Protective set for indemnity reserves could tend to show whether it acted as an ordinarily prudent insurer in rejecting the terms of Dean's settlement offers in the Underlying Litigation and whether it did so knowingly. They cite the deposition testimony of Keith H. Prince ("Prince"), a Medical Protective manager and former adjuster, that an indemnity reserve reflects the best estimation of the file manager of what it would take to settle a case and the amount for which Medical Protective would be willing to settle. He testified that personnel who set indemnity reserves have various levels of monetary authority and that they consider liability exposure, likelihood of winning or losing a case, how badly was the plaintiff damaged (e.g., medical expenses, lost wages, pain and suffering), whether the client is defensible, quality of counsel on both sides, the plaintiff's presentability and appeal to a jury, and venue. Plaintiffs maintain that the factors Medical Protective considers are probative of whether it acted as an ordinarily prudent insurer in rejecting Dean's offers and settling the Underlying Litigation within policy limits and whether it did

...
...

so knowingly.

Medical Protective offers several arguments in opposition to plaintiffs' motion. Stated summarily, it posits that the question whether an insurer has breached a *Stowers* duty or committed an unfair settlement practice by failing to settle does not automatically make relevant the indemnity reserves set; Texas law mandates that reserves be established, setting them is not an admission of particular conduct or an evaluation of liability, loss reserve calculations do not normally involve evaluations based on thorough factual and legal considerations but are often set to comply with regulatory requirements and reflect insurance company business practices, and reserve information is thus irrelevant; discovery should not be allowed because insureds are primarily attempting to prove through evidence of the amount set that the insurer recognized that liability existed, and allowing proof for this purpose will have a chilling effect and prompt insurers to set reserves only at statutorily-mandated or unrealistically low amounts, which will adversely impact their financial health; one legal commentary argues that there is a presumption against disclosure of reserve information; and mandating disclosure violates public policy because insurers must establish loss reserves, they are not admissions that claims are valid or of *Stowers* violations or unfair claim settlement practices, and requiring disclosure penalizes insurers for complying with a requirement for doing business in the state. Regarding the testimony of Prince, Medical Protective contends that he nowhere states that setting reserves is based on a thorough factual or legal analysis by the claims manager, he addresses only generalities concerning the considerations used in setting reserves, and he acknowledges that the initial reserve is standard on every file, is not well thought out, and is only a starting figure. It points to deficiencies in his testimony that it maintains demonstrate that it is insufficient to make evidence regarding indemnity reserves discoverable or admissible.

Medical Protective's arguments against discovery essentially relate to the weight of the evidence or to excludability under Fed. R. Evid. 403 rather than to discoverability. Fed. R. Civ. P. 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In order for information concerning Medical Protective's indemnity reserves not to be discoverable, it must not be relevant.

To establish that this information is not relevant, Medical Protective must demonstrate that it has no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. In this case, this means that the evidence must lack any tendency to show that an ordinarily prudent insurer would have accepted the terms of Dean's settlement offers in the Underlying Litigation. Medical Protective insured Dr. Swicegood for medical malpractice in the amount of $500,000, and it insured the Clinic in the amount of $100,000. As plaintiffs point out, if Medical Protective established an indemnity reserve of $100,000 on the claim against the Clinic, this evidence would tend to make it more probable that Medical Protective thought it likely that the covered portion of the judgment against the Clinic would exceed $100,000, and that it was not acting as an ordinarily prudent insurer in rejecting Dean's $80,000 settlement offer. Similarly, if it set the reserve for Dean's claim against Dr. Swicegood at $500,000, it would tend to make it more probable that Medical Protective considered it a significant risk that the covered portion of the judgment against Dr. Swicegood would exceed

$500,000, and that it was not acting as an ordinarily prudent insurer in rejecting Dean's $150,000 offer to settle her claims against Dr. Swicegood and the Clinic. Medical Protective may be correct—and a jury may have little difficulty finding—that setting an indemnity reserve in a particular amount (including an opening reserve sent to the State Board of Medical Examiners when the lawsuit was opened) is not an admission of liability but is simply a response to a requirement of state law, to ensure company solvency and ability to pay claims, undertaken without a thorough factual and legal evaluation. Depending on the evidence, and assuming that Medical Protective set indemnity reserves of $500,000 and $100,000, the jury may also find that the company did so simply because it could have no greater liability under the policy limits and was acting according to sound business practices and to be fiscally prudent. But these reasons relate to the weight of the evidence, not to its admissibility or discoverability. Moreover, assuming *arguendo* that allowing a jury to consider such evidence would have a chilling effect on insurers and prompt them to set reserves only at statutorily-mandated or unrealistically low amounts—assumptions that have not been established in this record and are somewhat inconsistent with the assertion that reserves are set according to state-prescribed formulae[3]—this concern might support exclusion under Rule 403, not complete foreclosure of discovery.[4]

Moreover, Prince testified that an indemnity reserve is established according to the file manager's best estimation of what it would take to settle a case, the amount for which Medical Protective would be willing to settle, and (based on several factors) what the manager considered the

---

[3]For example, Prince testified that Medical Protective personnel who set indemnity reserves have various levels of monetary authority.

[4]Medical Protective has not established that merely allowing discovery of such reserves in *Stowers* and unfair claim settlement practices actions would have a chilling effect on how they are set.

company's liability to be. These factors would appear to have a direct bearing on whether Medical Protective acted as an ordinarily prudent insurer in rejecting Dean's settlement offers and thus make the evidence relevant and discoverable.

\* \* \*

Accordingly, plaintiffs' April 7, 2004 motion to compel is granted.

**SO ORDERED**.

July  29 , 2004.

                                              SIDNEY A. FITZWATER
                                              UNITED STATES DISTRICT JUDGE